Jay H. Floyd and Julia M. Floyd v. Commissioner.
Floyd v. Commissioner
Docket No. 80107.
United States Tax Court
T.C. Memo 1961-56; 1961 Tax Ct. Memo LEXIS 288; 20 T.C.M. (CCH) 303; T.C.M. (RIA) 61056; 13 Oil & Gas Rep. 913; February 28, 1961
Parker C. Fielder, Esq., P.O. Box 913, Midland, Tex., for the petitioners. David E. Mills, Esq., for the respondent. WITHEY
Memorandum Opinion WITHEY, Judge: A deficiency in the income tax of petitioners has been determined by the Commissioner in the amount of $6,865 for the taxable year 1952. Due to stipulated concessions of the parties the only issue before us is whether the proceeds from the assignment of certain in-oil payment rights by petitioner Jay H. Floyd constitute capital gains or ordinary income. All of the facts have been stipulated and are found in accordance with the stipulation which by reference is made a part hereof. Petitioners filed a joint individual income tax return with the director at Dallas, Texas, for the taxable year 1952. As of June 22, 1951, by assignment, petitioner Jay *289 H. Floyd had acquired, as lessee, a full seven-eighths working interest in an oil, gas, and mineral leasehold covering certain lands lying within Glasscock, Midland, and Upton Counties in the State of Texas. On that date, by assignment, petitioner conveyed his interest in a portion of such lands to Ashland Oil & Refining Company, a corporation, hereinafter referred to as Ashland. On October 31, 1951, also by assignment, he conveyed his interest in certain additional lands covered by the lease to Ashland. In each assignment petitioner made the following reservation: There is excepted from this assignment and reserved unto the Assignor herein, his heirs, successors and assigns forever the following overriding royalty: (a) On oil wells and wells making oil and gas (including casinghead gas): One-fourth (1/4th) of all oil and one-fourth (1/4th) of the market value at the well of all gas and casinghead gas produced, saved and sold from any well or wells on the lands above described during each calendar month in which the daily average pipeline runs of oil shall be more than twenty-five (25) barrels per well; One-eighth (1/8th) of all oil and one-eighth (1/8th) of the market value *290 at the well of all gas and casinghead gas produced, saved and marketed from any well or wells on the premises herein assigned during each calendar month in which the daily average pipeline runs of oil shall be twenty-five (25) barrels per well or less; (b) On wells making gas only: One-eighth (1/8th) of the market value of the well of all gas produced, saved and sold off the premises. * * * Further there is reserved and excepted in favor of Assignor, his heirs, succesors and assigns, an undivided five-sixteenths (5/16ths) of all oil, gas and other hydrocarbons in and under and that may be produced and saved from the leasehold interests herein assigned until Assignor, his successors and assigns shall have received from said reserved five-sixteenths (5/16ths) interest in said leasehold estates, and not otherwise, oil, gas and other hydrocarbons equal to, when calculated at the market price thereof when produced, less all gross production, pipeline and severance taxes, the sum of $7,500.00 for the first producing oil or gas well completed by Assignee, his successors or assigns, on each forty-acre tract included within the acreage affected by this assignment. * * * *291 On April 15, 1952, by assignment, petitioner conveyed to J. Howard Marshall his entire interest in the in-oil payments referred to in the above reservation. During 1952 he received $75,000 in cash from Marshall as consideration for his April 15, 1952, assignment. Had petitioner retained such oil payment rights, upon completion of the first well upon each 40-acre tract included within the 840 acres covered by his assignments to Ashland, he would have received an aggregate amount of $157,500. Concurrently, petitioner, by letter, agreed with Marshall as follows: Concurrently herewith I am assigning to you all interest in and to the oil payment reserved by me in my assignments to Ashland Oil & Refining Company covering: * * *
[Description of properties omitted.] In principal amount the oil payment equals $7,500.00 times the number of producing wells completed on the entire acreage (counting, for this purpose, only the first producing well completed on each forty-acre tract). There are 840 acres involved, or twenty-one locations. As of this date, fifteen producing wells have been completed and three additional wells are being drilled; thus, at this time there is due in principal *292 amount on the oil payment $112,500.00. Assuming that the three drilling wells will produce (and they are all offsets) an additional $22,500.00 will shortly be added to the amount due under the oil payment. If the remaining undrilled locations should be drilled and prove productive the maximum amount of the oil payment would be $157,500.00 As an inducement to you to purchase the oil payment and as a part of the consideration to you for doing so, I have agreed with you and do hereby agree, bind and obligate myself as follows: If, on January 31, 1953, Ashland Oil & Refining Company or its successors in interest shall not have completed twenty-one producing wells on the above described property, then at any time thereafter, upon demand from you, I agree to purchase from you a portion of the production payment from you, paying therefor the sum of $7,500.00 for each well less than twenty-one which shall have been completed on said property as of January 31, 1953. For example, if on said date there shall have been completed only nineteen producing wells, then, upon demand from you, I shall pay you the sum of $15,000.00 and you shall assign to me out of the interest which I am assigning *293 to you a production payment in the amount of $15,000.00. If twenty wells shall have been completed as of that date, I shall pay you the sum of $7500.00, or if only eighteen wells are then completed, I shall, upon demand, pay you the sum of $22,500.00. In the event you should make demand upon me hereunder, you shall, of course, tender to me an assignment of a production payment, payable out of the full interest assigned to you concurrently herewith until I shall have received a sum equivalent to the cash paid to you by me at that time; that is, the sum of $7500.00 if only one undrilled well is involved, or $15,000.00 if two undrilled wells are involved, etc. In the event of any such reassignment of a portion of this production payment, you shall pay me in cash the allocable portion of the discount realized by you in the purchase of this oil payment. In his income tax return for the taxable year 1952 petitioner reported the $75,000 received by him from Marshall as longterm capital gains from the sale of a capital asset. The parties agree that petitioner is liable for an addition to tax under section 294(d)(1)(A), Internal Revenue Code of 1939, for the year at issue, the computation *294 of which depends upon our deicsion as to the deficiency herein. Another issue raised by the pleadings has been conceded by the respondent. Petitioner contends that, because he conveyed to Marshall his entire interest in the in-oil payment rights reserved by him from his assignment of leasehold interests to Ashland, he has distinguished this transaction from those considered by the Supreme Court in Commissioner v. P. G. Lake, Inc., 356 U.S. 260, and that therefore the $75,000 proceeds are taxable only as capital gains from the sale of a capital asset held for more than 6 months under section 117 of the 1939 Code. The holding period is not in dispute. This exact issue was before us in Estate of O. W. Killam, 33 T.C. 345, in which decision on the issue was for the respondent. We think that case and Commissioner v. P. G. Lake., supra, are controlling of the instant case and see no reason to alter our position. Decision on the issue presented is for the respondent. Decision will be entered under Rule 50.